AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

RECEIVED
Middle District of Alabama

2019 MAY -7  P 1:02

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

DEBRA P. HACKETT, CLK
DISTRICT COURT
DISTRICT ALA

Case No. 2:19mj145-WC

Information associated with cellular telephone assigned call number (470) 394-8539 with international mobile subscriber identity/electronic serial number, IMSI 310260955553438

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Middle____ District of ____Alabama____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) | Possession with intent to distribute a controlled substance |

The application is based on these facts:
See attached affidavit incorporated herein by reference and made part of this application.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Todd Mims, Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 7, 2019

*Judge's signature*

City and state: MONTGOMERY, AL

WALLACE CAPEL, JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(470) 394-8539** WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER, **IMSI 310260955553438** THAT IS STORED AT PREMISES CONTROLLED BY **T MOBILE USA** | Case No. 2:19mj145-WC<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Todd Mims, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (470) 394-8539, with International Mobile Subscriber Identity/Electronic Serial Number IMSI 310260955553438 ("**SUBJECT PHONE**"), that is stored at premises controlled by T MOBILE USA, a wireless telephone service provider, headquartered at 4 Sylvan Way Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T MOBILE USA to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Task Force Officer ("TFO") with the United States Department of Justice, Drug Enforcement Administration ("DEA"). I am currently assigned to the New Orleans Field

Division of the DEA, Montgomery Resident Office ("Montgomery RO"). I have been assigned to DEA for approximately six months. Prior to serving as a TFO with DEA, I was the Commander of the Central Alabama Drug Task Force for approximately eleven years. I am employed by the Elmore County Sheriff's Office, and have been so employed for approximately twenty years. I have worked narcotics investigations for approximately eighteen years. I also served as TFO with DEA from 2003 until 2007 prior to being promoted to Commander. I have investigated violations of federal narcotics laws. I have executed and assisted in the execution of numerous federal and state search warrants that resulted in the arrest of suspects and the seizure of money and narcotics. I have also interviewed drug dealers, users, and confidential informants and have discussed with them the lifestyle, appearances, and habits of drug dealers and users, the use and meaning of coded language, and the concealment of assets. I have also participated in other aspects of narcotics investigations, including, but not limited to, undercover operations, conducting physical and electronic surveillance, controlled deliveries, execution of warrants, and arrests. I have monitored meetings and consensual telephone conversations between drug dealers and informants and undercover agents and have participated in physical surveillance of narcotics traffickers. During these surveillances, I have personally observed narcotics transactions, counter-surveillance techniques and the methods that narcotics traffickers use to conduct clandestine meetings. I am familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, coded or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations. Your affiant's training and experience also includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity, and their use of numerical codes and code

words to conduct drug transactions. Your affiant is also familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including but not limited to, the use of carriers to transport currency and proceeds, and the use of third parties to purchase or hold title to assets.

3. The facts sets forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is meant to show that there is merely sufficient probable cause for the requested warrant and does not set forth all my knowledge in the matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe violations of federal law, including, but not limited to, Title 21, United States Code, Sections 841(a)(1), Possession with the Intent to Distribute and Distribution of Controlled Substances; 843 (b), Use of a Communications Facility to Commit a Controlled Substance Felony; 846, Conspiracy to Possess with the Intent to Distribute and Distribute Controlled Substances; and Title 18, United States Code, Sections 1952, Interstate Travel in Aid of Racketeering (ITAR); and 1956, Laundering of Monetary Instruments.

## PROBABLE CAUSE

5. The United States, including DEA, is conducting a criminal investigation of Kelvin Jones, Keithfus Carter and other identified and unidentified subjects regarding possible violations of Title 21, United States Code, Section 841(a)(1).

6. On December 28, 2017, TFO Ethan Wiggins was contacted on the DEA duty telephone by a Source of Information (SOI) in regards to the drug trafficking activities of

3

Keithfus Carter and Khashia Mathis. The SOI stated Carter and Mathis were living together at 2195 Village Green Drive, Fairburn, Georgia 30213. The SOI stated Mathis was living at the residence full time but Carter was traveling back and forth to Troy, Alabama due to being on probation. The SOI also stated that the address Carter provided to his probation officer was that of his mother's home at 206 Trojan Way, Troy, Alabama 36081.

7. The SOI stated during the Christmas holidays he/she was visiting Carter and Mathis' home. The SOI was helping Carter and Mathis pack household items into a U-Haul moving truck to transport back to Alabama. The SOI stated Mathis lost her phone and asked the SOI to assist in finding it. The SOI stated that he/she looked inside packed boxes inside the cargo area of the U-Haul truck. The SOI looked inside a large plastic container and discovered approximately five (5) or six (6) suspected kilograms of cocaine. The SOI stated he/she sealed the container back and left the truck. The SOI stated Carter then instructed Mathis and Mathis' mother to drive the U-Haul truck to Troy, Alabama, which Mathis did. The SOI stated he/she did not question Carter and Mathis about the contents of the container.

8. During May 2018, agents from the DEA Montgomery Resident Office initiated an investigation into a drug trafficking organization in Luverne, AL based on information that the organization was trafficking cocaine and methamphetamine in Central and South Alabama. During the course of the investigation agents identified Devarlos Shanklin as a subject selling methamphetamine and cocaine for the organization.

9. On February 19, 2019, the Honorable W. Keith Watkins, United States District Judge, Middle District of Alabama, signed an order authorizing a wire intercept of AT&T

wireless cellular telephone number 334-429-1885 (Target Telephone 1), a cellular telephone used by Devarlos SHANKLIN to communicate with his drug trafficking associates.

10. On February 23, 2019, at approximately 12:39 PM, CST, agents monitoring the court authorized wire intercept of Target Telephone 1 intercepted an incoming call (Session No. 928) from cellular telephone number 404-401-2079, which agents learned was being used by Kelvin Jones. During the call, Jones stated, "Ninety Five" and Shanklin stated, "What's up?" Jones stated, "I said Ninety five (95)." Shanklin replied, "What?" Jones again stated "95" and Shanklin asked, "95 what?" Jones stated, "For the 9". Shanklin stated, "I don't have fifty-five" Shanklin then asked, "What can I get 4 for?" Jones replied, "I'd have to call him back and see, I ain't sure. Because he gave me a price, he gave me a price on really a halftime."

11. Based on my training, experience and knowledge of this investigation, your affiant believes when Jones stated "95", Jones is referring to $9,500 and when Jones stated, "for the 9", and Jones is referring to 9 ounces of cocaine. Further, your affiant believes Jones is referring to $9,500 for 9 ounces based on your affiant's knowledge of current drug prices for cocaine. Your affiant has also conducted controlled purchases of ounces cocaine from Shanklin utilizing a confidential source. Your affiant also believes when Jones stated, "he gave me a price on really a halftime," Jones is telling Shanklin he got a price for half of a kilogram of cocaine from his source of supply. Your affiant is also familiar with a half kilogram being referred to a "half time" based on training, experience and knowledge of this investigation.

12. On March 29, 2019, the Honorable W. Keith Watkins, United States District Judge, Middle District of Alabama, signed an order authorizing a wire intercept of AT&T

wireless cellular telephone number (404) 401-2079 (Target Telephone 2), a cellular telephone used by Kelvin Jones to communicate with his drug trafficking associates.

13. On April 23, 2019 at approximately 10:40 AM, agents conducting the court ordered intercept of Target Telephone 2 intercepted an outgoing telephone call (Session 6608) to telephone call number (470)394-8539, which is believed to be held by Keithfus Carter. During the conversation, Jones asked Carter "Uh, you on this end?" Carter replied "No, I'm in Montgomery right now." Jones then asked "Shit, what kind of numbers you got?" Carter stated "Shit, it depend on how many." Jones stated "Shit". Carter then asked, "What you want to do?" Jones replied and asked "Huh?" Carter told Jones "However many, they gonna be seven." Jones asked "That's for how many?" Carter replied "They gonna be seven for real. They niggas be killing for the shit. Shit look real good though." Jones responded "Shit, I'll grab me, I'll grab me like a little, a little five pack then." Carter replied "Alright, I'll grab it in a little bit and call you." Jones asked "Huh?" Carter stated "I said I'm going to grab it in a little bit and call you." Jones then asked "Oh, uh, uh, I'm saying, you coming down and going right back or am I meeting somebody else?" Carter stated "No, it gonna be me".

14. Based on my training, experience and knowledge of this investigation, your affiant believes the aforementioned conversation was Jones arranging to purchase five pounds of mid-grade marijuana from Carter for $700.00 each.

15. On April 23, 2019 at approximately 2:26 PM, agents conducting the court ordered intercept of Target Telephone 2 intercepted an incoming telephone call (Session 6704) from telephone call number (470)394-8539, which is believed to be held by Keithfus Carter. During the conversation, Carter tells Jones "Shit, I'm ready for you." Jones asked "You done made it

already?" Carter stated "Yeah just whenever you ready." Jones replied, "Oh, hell, you could have called me on the way I could have been on the way." Carter responded "Got caught up talking on the phone. Hold on bro, I'm ready though." Jones replied "I'm gonna swing by the house to grab the money and be on my way."

16. On April 23, 2019, at approximately 2:40 PM, agents initiated surveillance on JONES at his residence of 8 Darien Church Road in Luverne, Alabama. At approximately 2:52 PM, TFO Ty Thompson witnessed Jones exit his residence and walk towards his vehicle AGENT NOTE: Due to the remote location in which Jones' residence is located, surveilling agents could only conduct drive by surveillance of his residence. Further Jones' vehicle is a Maroon, 4 door, 2016 GMC Sierra displaying AL tag 925AMH registered to Lily R. Jones at 8 Darien Church Road in Luverne, Alabama. At approximately 3:00 PM, TFO Thompson drove back by Jones' residence only to find that Jones' vehicle was no longer there. Agents continued the surveillance operation and at approximately 3:45 PM, agents observed Jones' vehicle parked at 409 Trojan Way Troy, AL. Agents also observed a black Dodge Ram parked at the residence which Keithfus Carter has been known to drive. Further, agents know as a result of the investigation that 409 Trojan Way Troy, AL is the residence of a family member of Keithfus Carter.

17. Your affiant knows that obtaining the information requested in this affidavit would allow agents to better understand the common locations that Carter or co-conspirators use to conduct illegal transactions. Further, your affiant knows that by learning these common locations agents will be more likely to identify others involved in the criminal activities being investigated by agents. Obtaining the requested information will also assist agents in

corroborating surveillance that has already been conducted by agents related to this investigation and may identify other illegal transactions that Carter and other co-conspirators may be involved in. The location data requested via this affidavit will not only allow agents to identify locations that Carter has traveled to but also may identify locations of co-defendants, "stash" houses, hidden assets or locations that weapons are stored. Your affiant knows that within the information requested by this affidavit there is not only location data but also other data sets that may include telephone numbers that Carter communicated with while Carter was in specific locations, this information will likely also be valuable to the investigation.

18.  In my training and experience, I have learned that T MOBILE USA is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

19. Based on my training and experience, I know that T MOBILE USA can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as T MOBILE USA typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

20. Based on my training and experience, I know that wireless providers such as T MOBILE USA typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T MOBILE USA typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE's** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

22. I further request that the Court direct T MOBILE USA to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T MOBILE USA who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

23. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Todd Mims
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on __May 7__, 2019

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (470) 394-8539 , [with International Mobile Subscriber Identity/Electronic Serial Number IMSI 310260955553438 ("the Account"), that are stored at premises controlled by T MOBILE USA ("the Provider"), a wireless telephone service provider, headquartered at 4 Sylvan Way Parsippany, New Jersey.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period March 5, 2019 to April 5, 2019. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);

     ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long distance telephone connection records;

    iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

     v. Length of service (including start date) and types of service utilized;

    vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received and any available RTT, PCMD, NELOS, and other historical GPS Precision Location Information associated with the transactions to include timing advance records such as TRUE CALL.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of violations of federal law, including, but not limited to, Title 21, United States Code, Sections 841(a)(1), Possession with the Intent to Distribute and Distribution of Controlled Substances; 843 (b), Use of a Communications Facility to Commit a Controlled Substance Felony; 846, Conspiracy to Possess with the Intent to Distribute and Distribute Controlled Substances; and Title 18, United States Code, Sections 1952, Interstate Travel in Aid of Racketeering (ITAR); and 1956, Laundering of Monetary

Instruments. Involving the account and account holder during the period March 5, 2019 to April 5, 2019.